## Stanhope v. Cincinnati, New Orleans & Texas Pacific Railway Company, et al.

(Decided October 20, 1925.)

### Appeal from Kenton Circuit Court.

1.  Malicious Prosecution—Advice of Counsel Complete Defense.— Advice of Counsel is a complete defense to action for malicious prosecution, instituted in reliance in good faith on such advice given, after a full and fair statement to attorney of all facts in possession of defendant at the time and such additional facts as he should have obtained by exercise of reasonable diligence; it being immaterial that attorney's advice was unsound or erroneous.

2.  Malicious Prosecution—Federal Commissioner Not Disqualified to Advise on Liquor Prosecution Because of Bias.—Federal commissioner held not disqualified to advise institution of a prosecution of plaintiff for taking of liquor on facts as laid before him by defendants, by reason of bias entertained by him, because his compensation depended upon result of the trial.

3.  Malicious Prosecution—Evidence Held Not to Show Want of Full, Fair Disclosure to Counsel.—In action for malicious prosecution in charging plaintiff with taking of liquor, evidence held not to show that defendant did not fully and fairly disclose to counsel all facts known to him, concerning matter under investigation, or that he did not receive such advice or act upon it in good faith.

MYERS & HOWARD for appellant.

MAURICE L. GALVIN, JOHN L. RICH, GALVIN & TRACY and EDWARD COLSTON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted in the Kenton circuit court in 1917 by appellant, Stanhope, against the C., N. O. & T. P. Ry. Co. and J. E. Wallin to recover fifty thousand ($50,000.00) dollars damages for false and malicious prosecution by the defendants, and each of them, of and against appellant in the federal court on a charge of breaking into and stealing from a railroad freight car, carrying an interstate shipment of whiskey, and for having in possession stolen goods, and also for selling and offering to sell whiskey, an intoxicant, in violation of law, and perhaps other similar charges. The petition charges that appellee, Wallin, was a detective, or police officer, in the service of the railroad company, and that he, while in the employ of the railroad company and acting in the course of his employment and at the instance of the railroad company, brought about and instigated the prosecution against appellant, Stanhope, caused his arrest and later his indictment in the federal court and trial upon the indictment; that he was acquitted of the charges; that there was no foundation in truth and in fact for the prosecution, and that the whole was the result of malice on the part of Wallin and the officers of the railroad company in instituting and bringing about the prosecution; that previous to the institution of the prosecution appellant had borne a good reputation in the community where he lived and among those with whom he associated, for morality, honesty and industry, but that the institution of the prosecution had destroyed his good reputation and had caused him to lose his employment with the railroad company and he was unable to procure other employment; that he had expended large sums in defending himself against the malicious prosecution instituted by appellees, and in seeking other employment.

The railroad company and Wallin defended upon the ground that the prosecution was instituted in good faith after a fair and full investigation of the facts, and after the individual defendant had laid all the facts within his knowledge, and which were reasonably within his reach, before competent, learned and impartial attorneys, who advised him that appellant should be prosecuted upon the charge, and, thereupon instituted the prosecution, not at the instance of appellee company, but by

peace officers upon their own account, being public officers of the Commonwealth and of the federal government.

Appellant denied the good faith of both appellees in the prosecution, and also that they made fair and full investigation of the facts concerning the loss of the whiskey and the things out of which the prosecution against appellant arose, and denied that appellees fully and fairly laid the facts before counsel and obtained advice to institute the prosecution, and further denied that counsel to whom the matter was submitted by appellees was competent and unbiased. Stated differently, appellant contends that appellees did not in good faith fairly and impartially lay before the judicial officer and attorney who advised them, all the facts bearing on the question of guilt or innocence in their possession, or which they could have reasonably ascertained, and having failed in this are not entitled to exoneration, and the court erred as a matter of law in peremptorily instructing the jury to find and return a verdict for the defendants, now appellees.

The corporate defendant could act only through its agents, and if it is liable in this action for malicious prosecution it is because of the unwarranted conduct of its authorized agent acting within the scope of his authority. It is admitted that Wallin is a detective or policeman in the employ of the corporate defendant and was acting for and on its behalf at the time of the happening of the things out of which this suit arose. He was an experienced man in his line of work, having been in the employ of the railroad company for a number of years, and, as it appears in the record, was a faithful and obedient servant of his company. Appellant, Stanhope, was likewise in the employ of the corporate defendant at the time and had been for a number of years and enjoyed a good reputation among his associates and the people generally, and was regarded by his company as a faithful and industrious servant.

On October 19, 1915, a distillery at Burgin, near Danville, made a shipment of whiskey by freight to a point in Texas; on that day appellant Stanhope, as conductor, brought a freight train from Ludlow by way of Burgin to Danville, arriving at his destination at 5:30 p. m.; about 5:35 p. m. the train carrying the shipment of whiskey from Burgin arrived in the same Danville yards and remained there from that time until about 9:30 that night, when it started on its journey towards Texas. While in

the yards the car containing the whiskey with many other cars were shifted about in making up trains. Appellant, Stanhope, spent the night in the yards at Danville, it being his custom to sleep in his caboose. On the morning of the 20th two empty boxes marked "Dripping Springs Whiskey," and bearing serial numbers and shipping directions, were found about the railroad yards in Danville and were delivered to the depot agent of the corporate defendant. He called appellee, Wallin, the detective, and showed him the boxes and immediately Wallin, in his official capacity, called the distillery at Burgin to find out when and where they had made such a shipment of whiskey and whether the boxes bearing the serial numbers were a part of a recent shipment. This inquiry brought the information that the shipment had been made on the day before to a point in Texas in a N. & W. car of a stated number. Wallin then called up an associate officer in the same line of work at Somerset on the line of railroad over which the shipment of whiskey would pass on its way to Texas, and asked him to find out whether the car had been pillaged and what, if any, number of packages of the shipment were missing. The car was intercepted at Chattanooga, and it was discovered that two or more boxes of the whiskey were gone; but there were no signs of the seal on the car having been broken, though it was known to the detectives and railroad people generally that it was possible sometimes to open a railroad car without breaking the seal, or at least leaving evidence on the seal of the breaking. In a day or so a notorious bootlegger about Danville was arrested by federal officers for trafficking in intoxicating liquor, and placed in jail. Wallin, learning of this and having discovered wrappers and labels taken from "Dripping Springs whiskey," the kind contained in the freight car shipment, interviewed the bootlegger and elicited from him the statement that on the night of the 19th, when the car was supposed to have been broken into and the whiskey taken, that he obtained from appellant, Stanhope, a large quantity of whiskey near the yards, and that later that night he and others went to the caboose of appellant, standing in the railroad yards, and after knocking at one door of the caboose and being instructed to come to the other door, approached the other door and there received a basketful of whiskey from some one on the inside which they carried away; that before this time the witness had

·met appellant on the platform of the depot at Lexington and appellant had said to the witness, in substance, that he had a scheme by which they could make some money and when asked what it was, said, in substance, that he could furnish a large quantity of whiskey to the witness if the witness would sell it and divide the profits, and that the witness agreed to this and that he delivered the whiskey on the night of the 19th in pursuance to that agreement; that a certain other well known bootlegger was in town on the night of the 19th with the witness interviewed by Wallin but had since left town and was then in Somerset and knew all the facts which the witness was relating to Wallin. To verify the statement Wallin called up an associate detective in Somerset, and asked him to see the bootlegger named as being in that town, and to find out whether he was with the other bootlegger in Danville on the night of the loss of the whiskey and whether they, or either of them, had received any whiskey from appellant, Stanhope, in the way and manner related by the witness to Wallin; that after a short while the detective in Somerset called Wallin over the telephone and told him he had seen the bootlegger in Somerset, and that he had verified the statements made by the bootlegger in Danville. In the meantime Wallin as an officer had been associated with the chief of police of Danville in making other investigations concerning the loss of whiskey. Among other things they had discovered a large quantity of red liquor in one of the barber shops and had received information from the barber and from persons about the pool room that this was a part of the liquor taken from the freight car and that it came from the bootlegger who had given the interview to Wallin. Watching one night, they saw persons with lanterns going from a caboose in the yards to an embankment nearby and return; early next morning they examined the embankment and found a number of wrappers or papers bearing the name of ''Dripping Springs whiskey'' on and near the embankment and signs of where something had been buried, apparently bottles or jugs. They had also picked up many other scraps of evidence, all tending to corroborate the statement of the bootlegger and to substantiate his claim that appellant Stanhope was connected with the taking of the liquor from the freight car. With these facts all in hand Wallin and the chief of police of Danville called on Mr. Jackson, county attorney of Boyle county at that time, and laid them all

carefully before him. Jackson, according to his evidence, asked Wallin and the chief of police many questions concerning the facts which they had related; how they had obtained them and through whom. After going over the matter at great length, Jackson testifies he advised appellee, Wallin, and the chief of police to institute a prosecution against appellant Stanhope on one or more charges in connection with the taking of the liquor, but, as one of the supposed criminals had been arrested by the federal officers and was then in jail awaiting a hearing before the federal commissioner upon a liquor charge growing out of the taking of the liquor from the freight car, he advised them to go to Mr. Lawwill, federal commissioner in Danville, and to relate the facts. Lawwill was also a lawyer of many years' experience and had for several years been acting as commissioner of the federal court. Following the advice of the county attorney, Wallin and the chief of police went to the office of the federal commissioner and related the same facts to him in detail. After hearing the facts the commissioner sent for the bootlegger in jail and asked him about it, and he also told the commissioner what he had previously related to Wallin concerning the liquor obtained from the car and appellant's connection with it. The commissioner prepared an affidavit which the bootlegger signed and to which he was sworn. The commissioner, without giving any advice at that time, took the matter under further consideration and on the following morning sent for appellee, Wallin, and the U. S. marshal to come to his office; when they arrived there the commissioner advised Wallin that there were sufficient facts upon which to institute a prosecution of Stanhope for the taking of the liquor, and advised Wallin to institute such prosecution, and asked him and the marshal, one or the other, to make an affidavit to the facts so that a warrant might issue for appellant, Stanhope. Both appellant and the marshal at first declined to make the affidavit, but finally appellant Wallin consented to do so upon the advice of the commissioner, as testified to by both. Thereupon the warrant was issued and appellant, Stanhope, was arrested and the prosecution instituted.

Advice of counsel is a complete defense to an action for damages for malicious prosecution in civil actions where it appears that the prosecution was instituted in reliance in good faith on such advice, given after a full

and fair statement to the attorney of all the facts in possession of the defendant at the time and such additional facts as he could and should have obtained by the exercise of reasonable diligence, and the fact that the attorney's advice was unsound or erroneous will not affect the result. 31 R. 101; 18 R. C. L. 45.

Advice of counsel obtained upon a full and fair statement of the facts in the hands of the defendant and upon which advice the defendant in good faith acts, is a complete defense; so we have held in a number of cases. C., N. O. & T. P. Ry. Co. v. Beddow, 189 Ky. 140; Elmer v. Fox, *supra;* Moser v. Fable, 164 Ky. 517; Hughes Lumber Co. v. Wilson, 179 Ky. 462; Grocery Co. v. Hamlin, 193 Ky. 116.

In the recent case of Cook v. Bratton, 168 Ky. 301, it was said: "It is thoroughly established in this jurisdiction and generally, that to sustain an action for malicious prosecution, it must affirmatively appear (1) that the defendant was the proximate and efficient cause of putting the law in motion against the plaintiff in the action; (2) that he did so maliciously, and (3) without probable cause. These three elements, malice, want of probable cause and a procuring of the warrant or indictment, must concur."

Upon the same subject, in the case of Elmer v. Fox, 172 Ky. 291, the court in substance held that in a suit to recover damages for malicious prosecution, the burden is on the plaintiff to show both malice and want of probable cause, and neither of these essentials is shown by establishing only an acquittal of the charge preferred against the plaintiff.

In the case of Harper v. Howerton, 194 Ky. 840, we held that malice will be inferred or implied from proof of the want or absence of probable cause.

In the case of C., N. O. & T. P. Ry. Co. v. Beddow, *supra,* we held that advice of competent counsel, fairly obtained, exempts the party acting upon it from the imputation of proceeding maliciously and without probable cause.

In the case of Elmer v. Fox, *supra,* it was decided that something more than a mere political interest is necessary to disqualify an attorney and to render his advice insufficient under this rule.

In 38 C. J. 427, it was said: "Since in most jurisdictions advice of counsel goes to the question of probable

cause and must be considered in determining that matter, in such jurisdictions defendant makes out a complete defense by showing that he submitted to proper counsel a statement conforming to legal requirements concerning the guilt of the accused; that in good faith he received advice justifying the prosecution and acted on that advice in instituting the proceedings complained of. If he shows these things he is entitled to immunity to damages although it may appear that the facts did not warrant the advice nor the prosecution, or that the accused was innocent.'' This text is supported by a long line of Kentucky cases stated in a footnote.

As basis for this rule it has been said that if a citizen who has just cause to believe and honestly does believe that a crime has been committed, after taking reasonable precaution, cannot be protected from liability from damages, it would follow that a conviction would have to be guaranteed in every criminal prosecution, and that the criminal law would in many instances fail of enforcement. Anderson v. Seattle Lighting Co., 71 Wash. 155. And further, that counsel is supposed to pass upon that question and his advice honestly given and honestly acted upon to preclude any successful claim of negligence or imprudence on the part of the prosecutor, and bar a recovery.

With these well established principles before us, let us consider the ruling of the trial court in directing a verdict for defendants, appellees here, in the instant case. Appellant proved his loss and damage, or at least introduced sufficient evidence to have supported a verdict in his favor upon that branch of the case, but he did not prove any fact which established malice or want of probable cause on the part of appellees, or either of them, when measured by the rules which we have stated above. Appellees proved in detail the efforts made by appellee Wallin to find out all the facts as well as the facts which he uncovered, and that he in company with the chief of police of the city of Danville, laid these facts fairly and fully before the county attorney of Boyle county, whose duty it was to prosecute cases of that character, and that the county attorney, after hearing the statements, advised Wallin and the chief of police that there was sufficient evidence to warrant a prosecution of appellant upon more than one criminal charge and advised them to institute such prosecution with and before the federal com-

missioner of that city. It is also shown that Mr. Jackson, the county attorney, was a lawyer of many years' experience and entirely capable of giving advice in such cases. No attempt was made to show the county attorney was interested in any way in the case further than as an officer, or that he entertained any bias; and we are led to believe that he heard the matter impartially and gave a sincere and honest opinion upon the question of whether the prosecution should be instituted against appellant. Appellees also proved that they presented the matter by the same persons to the federal commissioner in Danville, an officer in the service of the United States government, whose duty it is and was to investigate violations of the liquor law, and after stating all the facts to him, received advice similar to that given by the county attorney; that the commissioner, Mr. Lawwill, was an attorney of many years' experience and capable of giving advice in such cases. It is insisted, however, that he was not free from bias in that he was exercising the duties of an office, the remuneration for which depended upon the finding of the accused to be guilty or at least upon holding the accused on the criminal charge to the grand jury. There is, however, no evidence to substantiate this charge against the commissioner. He appears to have given the matter careful consideration before advising appellee and the chief of police to make an affidavit for a warrant. The facts presented to him were clearly sufficient to warrant the advice he gave. In the absence of some competent evidence to establish bias on the part of the commissioner other than the mere fact that his compensation depends upon the result of the trial, we are not willing nor are we authorized to presume that he was disqualified to give advice by reason of bias entertained by him.

Appellant did not attempt to show, nor was there any evidence from which the lower court could have concluded, that appellant did not fully and fairly disclose to counsel all the facts known to him concerning the matter under investigation, nor that he did not receive the advice which he says he received; nor that he did not act upon that advice in good faith. There being no evidence to the contrary upon this branch of the case, there was nothing to submit to the jury and the trial court properly directed a verdict in favor of appellees. A more complete defense under the rule exonerating a defendant who has

acted upon the advice of counsel could scarcely be made or presented than that offered by appellees. We can find no reason to disturb the judgment of the lower court. Judgment affirmed.